**In the**
**United States Court of Appeals**
**for the Fifth Circuit**

PHIL BRYANT & DEBORAH BRYANT
*Plaintiffs-Appellants,*

*v.*

MICHAEL ROSENBERG & ARENA GROUP HOLDINGS, INC.,
*Defendants-Appellees.*
_____

On Appeal from the United States District Court
for the Southern District of Mississippi, Northern Division
No. 3:24-cv-260-KHJ-MTP
_____

**BRIEF OF APPELLEE MICHAEL ROSENBERG**
_____

Respectfully submitted:

S. Ray Hill, III (MS Bar No. 100088)
McAngus Goudelock & Courie
119 N. 9th Street
Oxford, MS 38655
(662) 281-7843
ray.hill@mgclaw.com

*Attorney for Michael Rosenberg*

No. 25-60196

**In the**
**United States Court of Appeals**
**for the Fifth Circuit**

PHIL BRYANT & DEBORAH BRYANT
*Plaintiffs-Appellants,*

vs.

MICHAEL ROSENBERG & ARENA GROUP HOLDINGS, INC.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Mississippi, Northern Division
No. 3:24-cv-260-KHJ-MTP

**CERTIFICATE OF INTERESTED PARTIES**

The undersigned counsel of record certifies that the following listed persons

and entities have an interest in the outcome of this case. These representations are

made in order that the judges of this Court may evaluate possible disqualification or

recusal:

1.    Appellants:  Phil Bryant and Deborah Bryant

2.    Appellees:   Michael Rosenberg and Arena Group Holdings, Inc.

3.    Attorneys for Appellants:  William M. Quin II and W. Thomas
      McCraney, III of the law firm of McCraney Montagnet Quin &
      Noble, PLLC, Ridgeland, Mississippi.

4.    Attorney for Appellee Michael Rosenberg:   S. Ray Hill, III of the law
      firm of McAngus, Goudelock & Courie, LLC, Oxford, Mississippi

5.    Attorneys for Appellee Arena Group Holdings, Inc.:  Paul A.
      Rosenthal (Florham Park, NJ), Katlyn M. Moseley (Washington,
      D.C.), D. Alexander Harrell, and Susan E. England (Dallas, TX), of
      the law firm of Faegre Drinker Biddle & Reath, LLP

Respectfully Submitted:


*s/ S. Ray Hill, III*
S. Ray Hill, III (MS Bar No. 100088)
McAngus Goudelock & Courie
119 N. 9th Street
Oxford, MS 38655
(662) 281-7843
ray.hill@mgclaw.com

*Attorney for Michael Rosenberg*

## STATEMENT REGARDING ORAL ARGUMENT

The issues on appeal are straightforward. The actual malice standard governing a claim brought by a public figure against the media for defamation is well established. Therefore, oral argument is unnecessary.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES .......................................................i

STATEMENT REGARDING ORAL ARGUMENT ..........................................iii

TABLE OF CONTENTS.................................................................................iv

TABLE OF AUTHORITIES ..........................................................................vi

STATEMENT OF THE CASE ....................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................ 5

ARGUMENT ............................................................................................... 8

   A.   The actual malice standard. .................................................................. 8

   B.   Pleading actual malice. ........................................................................ 9

   C.   The four allegations of actual malice contained in the Complaint. ........... 10

       1.   The allegation that Rosenberg disregarded objective evidence ............ 11

       2.   The allegation that Rosenberg chose to believe Nancy New ................ 12

       3.   The allegation that Rosenberg ignored investigators' conclusions ....... 13

       4.   The allegation that no competent evidence supported the Article ......... 14

   D.   Actual malice allegations listed in Appellants' Brief ............................. 14

       1.   The fact that the Article is unfavorable to Gov. Bryant is not evidence of actual malice. ..................................................................... 15

       2.   The Article is entirely plausible. ..................................................... 18

       3.   The Appellees are under no obligation to publish a story that makes Gov. Bryant look good. ................................................................... 20

       4.   The failure to include Shad White's comments does not support an allegation of actual malice. ............................................................. 20

       5.   The Appellees are not required to include Gov. Bryant's preferred sources in the Article. .................................................................... 21

       6.   The Article accurately reported issues concerning the credibility of Burnett and Davis .......................................................................... 22

       7.   The Appellees' investigation was entirely adequate. ........................... 22

       8.   The Appellees did not deliberately distort facts ................................. 23

     9.    The Appellees did not follow a preconceived storyline. ...................... 23

    10.   The Appellees refusal to retract the Article is not evidence of actual malice............................................................................................ 23

  E.  The District Court's denial of the Appellants' request to file an Amended Complaint was correct. ....................................................................... 24

CONCLUSION ........................................................................................ 25

CERTIFICATE OF SERVICE ................................................................. 26

CERTIFICATE OF COMPLIANCE .......................................................... 27

# TABLE OF AUTHORITIES

**Case Law**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................5, 9

*Brewer v. Memphis Pub. Co.*,
626 F.2d 1238 (5th Cir. 1980).......................................................5, 10

*City of Cllinton, Ark. V. Pilgrim's Pride Corp..*,
632 F.3d 148 (5th Cir. 2010).............................................................11

*Dickens v. Illinois*,
753 F. App'x 390 (7th Cir. 2018)........................................................9

*Garrison v. Louisiana*,
379 U.S. 64 (1964)..............................................................................8

*Gines v. D.R. Horton, Inc..*,
699 F.3d 812 (5th Cir. 2012)...............................................................9

*Harte-Hanks Commc'ns, Inc. v. Connaughton.*,
491 U.S. 657 (1989)............................................................................8

*HCB Fin Corp v. McPhearson*,
8 F.4th 335 (5th Cir. 2021).................................................................25

*In re Life Partners Holdings, Inc.*,
926 F.3d 103 (5th Cir. 2019) .........................................................9, 14

*Jacoby v. Cable News Network, Inc.*,
No. 21-12030, 2021 WL 5858569, *5 (11th Cir. Dec. 10, 2021)..........................21

*Journal Pub. Co. v. McCullough*,

743 So.2d 352 (Miss. 1999) ...................................................................6

McCullough v. Cook,
743 So. 2d 355 (Miss. 1999) ...............................................................8

McFarlane v. Sheridan Square Press, Inc.,
74 F.3d 1296 (D.C. Cir. 1996) .........................................................13

Mitchell v. Random House. Inc.,
703 F. Supp. 1250 (S.D. Miss. 1988) ...........................................5, 10

New York Times v. Sullivan,
376 U.S. 254 (1964) .........................................................................2, 5

Rebozo v. Washington Post Co.,
637 F.2d 375 (5th Cir. 1981) ........................................................ 16-18

St. Amant v. Thompson.,
390 U.S. 727 (1968) ..................................................................8, 10, 13

Tally v. Time, Inc.,
923 F.3d 878 (10th Cir. 2019) ...........................................................11

Tavoulareas v. Piro,
759 F.2d 90 (D.C. Cir. 1985) .............................................................18

U.S. ex rel. Williard v. Humana Health Plan of Tex., Inc.,
336 F.3d 375 (5th Cir. 2003) ...............................................................9

Walker v. Beaumont Indep. Sch. Dist.,
938 F.3d 724 (5th Cir. 2019) ...........................................................5, 9

*Watkins v. Allstate Prop. & Cas. Ins. Co.*,

90 F.4th 814 (5th Cir. 2024) ..................................................................9

**<u>Federal Statues & Rules</u>**

Fed. R. Civ. P. 12(b)(6) .................................................................. 2, 9, 15, 25

Fed. R. Civ. P. 15 (a)(2) ........................................................................ 24

# STATEMENT OF THE CASE

This case arises from the publication of a *Sports Illustrated* article entitled: "The Driving Force: How Brett Favre's Demands for Cash Fueled a Scandal." (the "Article").[1] Appellee Michael Rosenberg ("Rosenberg") wrote the Article. Appellee Arena Group Holdings, Inc. ("Arena Group") published *Sports Illustrated* during this time.

The focus of the Article is Brett Favre ("Favre")- a Mississippi native, University of Southern Mississippi ("USM") alumnus, and NFL Hall of Fame quarterback. The Article delves into the well-publicized "Mississippi Welfare Scandal" that involved the diversion of millions of dollars in state welfare dollars ("TANF" funds)[2] meant for Mississippi's neediest citizens to fund a volleyball facility at USM and to invest in a company known as Prevacus.[3]

The Article is based on interviews, court records, and text messages concerning Favre's efforts to secure money for the volleyball facility and the Prevacus investment. The Article discusses Favre's enlistment of the Appellant, former Mississippi Governor Phil Bryant ("Gov. Bryant"), to help with obtaining the needed funds.

---

[1] ROA.31-77.

[2] Mississippi's Temporary Assistance for Needy Families ("TANF") program provides cash assistance and job training for low income Mississippians with children under the age of eighteen (18).

[3] ROA.31-77.

After the Article was published, Gov. Bryant and his wife, former Mississippi First Lady Deborah Bryant (collectively "Appellants"), eventually sued Rosenberg and Arena Group (collectively "Appellees") for defamation.[4] The Complaint alleges that the Article is replete with false and defamatory statements accusing Gov. Bryant of illegally directing TANF funds to USM and Prevacus.[5]

The Appellees moved to dismiss the Complaint for failure to state a claim pursuant to Rule 12 (b)(6) of the *Federal Rules of Civil Procedure*.[6] These motions argued that the Complaint blatantly mischaracterized portions of the Article as false in an effort to state a claim for defamation. The motions also argued that even if the Complaint did adequately allege falsity, the Appellants still failed to sufficiently plead allegations supporting a claim of actual malice pursuant to the standard set forth in *New York Times v. Sullivan*.[7]

Perhaps recognizing that their Complaint was indeed deficient in regard to the claim of actual malice, the Appellants argued in response to the motions to dismiss that the exhibits attached to their Complaint contained various "indicators of actual malice."[8] They also asked the District Court in a footnote to their Response that

---

[4] ROA.6-31.

[5] ROA.6-31.

[6] ROA.311-343, 365-377.

[7] ROA.311-343, 635-377.

[8] ROA.868-877.

should it determine that the Complaint failed to state a claim, to allow them to file an Amended Complaint.[9]

In considering the Motions to Dismiss, the District Court identified the four (4) allegations[10] in the Complaint relative to the issue of actual malice:

1.    The allegation that Rosenberg disregarded objective evidence.

2.    The allegation that Rosenberg chose to believe Nancy New, the former head of a Mississippi non-profit and close friend of the Appellants who pled guilty to the misuse of state funds.

3.    The allegation that Rosenberg ignored investigator's conclusions.

4.    The allegation that no competent evidence supported the Article.

In regard to allegation 1, the District Court found that it was conclusory and was based on a false premise. The District Court further found that Rosenberg had accurately reported the substance of public statements he cited in the Article and that he specifically addressed and included in the Article Gov. Bryant's denial of wrongdoing.  In fact, the District Court correctly pointed out that the objective

---

[9] ROA.846.
[10] ROA.958, 961, 963, 965.

evidence supporting Gov. Bryant's denials, which the Appellants claim Rosenberg ignored, were actually cited and discussed in the Article.[11]

In regard to allegations 2, 3, and 4, the District Court found these allegations to be conclusory, self-defeating, and contradicted by the plain language of the Article. The District Court also found that the Appellants' Response to the motions actually confirmed that their allegations lacked merit.[12]

Therefore, the District Court granted the motions and dismissed all of the Appellants' claims with prejudice.[13]  The district court also denied the Appellants leave to file an Amended Complaint, finding their request for leave to be "bare boned" and futile.[14]

The district court then entered a final judgment in favor of the Appellees. The Appellants timely perfected their appeal to this Court.[15]

---

[11] ROA.958, 961, 963, 965.

[12] ROA.958, 961, 963, 965.

[13] ROA.970.

[14] ROA.969-70.

[15] ROA.972-73.

## SUMMARY OF THE ARGUMENT

Under Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, a plaintiff's complaint may be dismissed if it fails to include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint that presents only "the mere possibility of misconduct" is insufficient. Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 734 (5th Cir. 2019).

Under Mississippi law, the court in a defamation case must make the threshold determination of whether the language in question is actionable. Brewer v. Memphis Pub. Co., 626 F.2d 1238, 1245 (5th Cir. 1980); Mitchell v. Random House, Inc., 703 F. Supp. 1250, 1258 n.10 (S.D. Miss. 1988) ("a libel action lends itself to judicial scrutiny in the early stages of a defamation lawsuit"). Dismissal of defamation suits for failure to state a claim occurs "with relative frequency." Id.

The parties agree that in order for the Appellants to survive a Motion to Dismiss for failure to state a claim, they must plausibly plead in their Complaint that certain statements in the Article were published with "actual malice." New York Times v. Sullivan, 376 U.S. 254, 280 (1964). This requires the Appellants to plausibly plead that the Appellees knew that the statements complained of were false, or acted with reckless disregard for whether the statements were true or not. Id.

Absent knowledge of falsity, Appellants must plausibly allege that the Appellees entertained "serious doubts" that the statements in the Article were true and had a "high degree of awareness" that the statements were probably false. Journal Pub. Co. v. McCullough, 743 So.2d 352, 359 (Miss. 1999).

The District Court determined that the Appellants had failed to meet their burden to plausibly plead their claim of actual malice. This was the correct decision. All four (4) of the allegations concerning actual malice- that Rosenberg disregarded objective evidence, that Rosenberg believed the statements of Nancy New, that Rosenberg ignored investigator's conclusions, and that no competent evidence supported the Article- are conclusory statements unsupported by plausible factual allegations. Furthermore, the allegations in the Complaint are contradicted by the plain language of the Article itself.

In their Appellants' Brief, the Appellants do not seriously contend that the language contained in the Complaint states a claim for actual malice. Instead, they point to the exhibits attached to the Complaint and their Response to the Motions to Dismiss, and ask this Court to sift through hundreds of pages in the hopes that this Court will determine that somewhere buried within this deluge are statements of fact that could lead to an inference of "actual malice." They also take these exhibits and invent new arguments for plausibility that they did not raise in the District Court.

Obviously, if the Appellants truly could plead sufficient facts to state a claim of actual malice they would have laid those facts out clearly and succinctly in their Complaint. Since they are incapable of doing that, they have instead chosen to throw as many conclusory statements and contradictory arguments before this Court as they possibly can in the hope that something will "stick." The District Court rejected this tactic, as should this Honorable Court.

And of course, if the Appellants were in fact given another bite at the apple through the filing of an Amended Complaint, they would resort to the same tactic again. There are simply no facts that could be plead that would plausibly establish that the Appellees entertained "serious doubts" that the statements in the Article were true and had a "high degree of awareness" that the statements were probably false. For these reasons, the request for leave to amend is futile.

The Appellees respectfully assert that the District Court's Order dismissing this case with prejudice should be affirmed in all respects.

# ARGUMENT

## A.    The actual malice standard.

In Mississippi, a public figure such as Gov. Bryant must prove that the allegedly defamatory statements were made with "actual malice"—meaning that the Appellees either knew the statement was false or acted with reckless disregard for its truth, despite having subjective doubts about its accuracy. McCullough v. Cook, 743 So. 2d 355, 359 (Miss. 1999).

Importantly, Gov. Bryant must meet a heightened burden of proof, showing actual malice by clear and convincing evidence, not merely by a preponderance of the evidence. Id. at 359–60.

In this case, wherein the Appellants are not alleging knowing falsity, they must demonstrate more than just negligent or imprudent conduct.  McCullough, 743 So. 2d at 361. Specifically, there must be sufficient evidence that the Appellees actually entertained serious doubts about the truth of the Article. Id. (citing Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 688 (1989); St. Amant v. Thompson, 390 U.S. 727, 731 (1968)).

This subjective standard requires proof that the Appellees were "highly aware" of the likely falsity of the statement.  Id. (quoting Garrison v. Louisiana, 379 U.S. 64, 74 (1964)).

## B. Pleading actual malice.

Under Rule 12(b)(6) of the *Federal Rules of Civil Proc*edure, a plaintiff's complaint may be dismissed if it fails to include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint that presents only "the mere possibility of misconduct" is insufficient. Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 734 (5th Cir. 2019)

Courts do not treat conclusory allegations or "naked assertions devoid of further factual enhancement" as true. Watkins v. Allstate Prop. & Cas. Ins. Co., 90 F.4th 814, 817 (5th Cir. 2024); Walker, 938 F.3d at 735. Factual allegations that merely suggest the possibility of liability, without pushing the claim across the threshold of plausibility, are legally insufficient. Walker, 938 F.3d at 735.

Generally, a court reviewing a Rule 12(b)(6) motion considers only the complaint itself. Gines v. D.R. Horton, Inc., 699 F.3d 812, 820 (5th Cir. 2012). However, it may also consider documents attached to or incorporated in the complaint. U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc., 336 F.3d 375, 379 (5th Cir. 2003). Still, attaching lengthy exhibits does not salvage an otherwise deficient pleading. In re Life Partners Holdings, Inc., 926 F.3d 103, 117 n.6 (5th Cir. 2019). Courts are not obligated to sift through exhibits to identify potential claims. Dickens v. Illinois, 753 F. App'x 390, 392 (7th Cir. 2018).

Under Mississippi law, the court in a defamation case must make the threshold determination of whether the language in question is actionable. Brewer v. Memphis Pub. Co., 626 F.2d 1238, 1245 (5th Cir. 1980); Mitchell v. Random House, Inc., 703 F. Supp. 1250, 1258 n.10 (S.D. Miss. 1988) ("a libel action lends itself to judicial scrutiny in the early stages of a defamation lawsuit"). Dismissal of defamation suits for failure to state a claim occurs "with relative frequency." Mitchell, 703 F. Supp. at 1258 n. 10. Id.

In the case at bar, the Appellants do not allege that the Appellees knew any statements in the article were false. Therefore, to survive a motion to dismiss, they had to plead facts supporting a plausible inference that the defendants seriously doubted the truth of those statements and were highly aware they were likely false. St. Amant v. Thompson, 390 U.S. 727, 731 (1968). Neither the Complaint nor its extensive exhibits contain any such allegations.

## C. The four allegations of actual malice contained in the Complaint.

The District Court identified four (4) allegations contained in the Complaint that are related to the actual malice claim: that Rosenberg disregarded objective evidence, that Rosenberg believed the statements of Nancy New, that Rosenberg ignored investigator's conclusions, and that no competent evidence supported the Article. As the District Court correctly determined, these conclusory and contradictory allegations fall woefully short of stating a claim for actual malice.

**1.      The allegation that Rosenberg disregarded objective evidence.**

The Appellees are required to plead facts that support their conclusory allegation that Rosenberg disregarded objective evidence.  <u>City of Clinton, Ark. v. Pilgrim's Pride Corp.</u>, 632 F.3d 148, 154 (5th Cir. 2010).

As the District Court pointed out, they failed to meet this burden. In fact, the Complaint contains no factual statements supporting the claim that the Appellees disregarded objective evidence.

Furthermore, Appellants' Response to the motions to dismiss failed to buttress their conclusory allegations. Specifically, the Appellees claimed in their Response that the State Auditor, Shad White, told the press in October of 2021 that there was "no evidence" of Gov. Bryant's wrongdoing.  They claim that the failure of Rosenberg to cite to this interview is proof that Rosenberg disregarded objective evidence.

Of course, as the District Court noted, that is not what White actually said.[16] White said that if there was documented evidence of wrongdoing, then he wanted to see it. Furthermore, these statements were made back in October of 2021, before almost all the evidence and information that Rosenberg cited to in the Article had even occurred. In any event, Rosenberg is not required to cite to every single fact

---

[16] ROA.959

surrounding a topic because that would be impossible. *See* <u>Tally v. Time, Inc.</u> <mark>923 F.3d 878, 905-06</mark> (10th Cir. 2019).

Rosenberg was also careful to include Gov. Bryant's denials of wrongdoing in the Article. This torpedoes any claim that the Article was so slanted against Bryant that it creates an inference of actual malice. In fact, Rosenberg stated specifically that Gov. Bryant did not accept any Prevacus stock.[17]

Finally it bears pointing out that Gov. Bryant himself viewed the same evidence, i.e. text messages, that Rosenberg relied on in his reporting and told the press that the evidence against him "did not look good" and that people would look at the evidence and conclude that "of course he knew" about the illegal diversion of TANF funds.[18] It is hard to imagine how Gov. Bryant could look at the same evidence Rosenberg did, concluded that the evidence makes him look guilty, and then claim Rosenberg defamed him by accurately reporting the same exact evidence. At the very least, it completely undercuts any notion that the Appellees could have possibly had any doubts about the truth of the evidence reported in the Article.

### 2. The allegation that Rosenberg chose to believe Nancy New

Again, there are no factual statements in the Complaint that would support this conclusory allegation.

---

[17] <mark>ROA.960</mark>
[18] <mark>ROA.953</mark>

Furthermore, the allegation itself defeats a claim of actual malice. The actual malice inquiry is a subjective one, i.e. did the reporter actually entertain "serious doubts" as to the truth of his reporting? St. Amant, 390 U.S. at 731. Thus, if Rosenberg believed that what New said was truthful, then he could not have seriously doubted the truth of her statements as a matter of basic logic.

In any event, Rosenberg included in the Article information about New that could lead a reader to doubt her credibility, i.e. that she pleaded guilty to twelve felony counts. He even stated in the Article: "Her reputation is shot."[19]

In other words, he provided his *Sports Illustrated* readers with the very information Gov. Bryant claims make New's statements suspect. This refutes any claim of actual malice. See McFarlane v. Sheridan Square Press, Inc., 74 F.3d 1296, 1304 (D.C. Cir. 1996).

### 3. The allegation that Rosenberg ignored investigators' conclusions

The Appellants' allegation that Rosenberg "ignored the integrity and conclusions of every state and federal prosecutor who has reviewed the case" is conclusory. The Complaint fails to state exactly what conclusions the investigators reached that Rosenberg ignored.

Of course, Rosenberg did correctly point out that the federal investigation was ongoing, which means that it had not concluded at time the Article was published.

---

[19] ROA.963

He also accurately reported that the state investigator had been fired by Gov. Bryant's successor before he could reach a conclusion.[20]

### 4. The allegation that no competent evidence supported the Article

Finally, Gov. Bryant's allegation that "[t]here is no competent evidence that [he] did anything corrupt or illegal" is also conclusory.

Furthermore, the Article cites to litany of sources such as text messages, court records, interviews, and the *Mississippi Today* reporting that won the Pulitzer Prize.[21] There is no allegation in the Complaint or its exhibits that the Appellees had serious doubts about the truth of these sources.

### D. Actual malice allegations listed in Appellants' Brief

Clearly, in formulating their arguments before this Court, the Appellants found it difficult to find much fault with the District Court's analysis. And so, they pretend as though their Complaint does not exist, and instead, meander their way through the mountain of exhibits in the Record for the purpose of listing (10) allegations that they claim meet the actual malice pleading requirements. Some of these allegations are rehashed and reframed arguments that the District Court rejected. Some are brand new. Obviously, this Court is under no obligation to follow the Appellants down this "rabbit hole." See, In re Life Partners Holdings, Inc., 926

---

[20] ROA.964

[21] ROA.31-77

n. 6 (5th Cir. 2019) (holding that a plaintiff may not simply attach a multitude of exhibits to his complaint in the hopes of making an otherwise deficient pleading sufficient under Rule 12 (b) (6)).

But should it chose to do so, the result is still the same- none of these allegations come close to supporting a claim that the Appellees actually entertained serious doubts about the truth of the Article.

Obviously, if the Appellants truly could plead sufficient facts to state a claim of actual malice they would have laid those facts out clearly and succinctly in their Complaint. Since they are incapable of doing that, they have instead chosen to throw as many conclusory statements and contradictory arguments before this Court as they possibly can in the hope that something will "stick." The District Court rejected this tactic, as should this Honorable Court.

### 1.     The fact that the Article is unfavorable to Gov. Bryant is not evidence of actual malice.

The crux of this allegation is that the Appellees published a story that the Appellants believe is so slanted against Gov. Bryant that the "negative slant" itself is evidence of actual malice. The Appellants' claim that in an effort to make the Article one sided, Rosenberg "suppressed information" and failed to offer an "innocent explanation" for the evidence he did include in the Article.

First and foremost, Rosenberg accurately reported the information in the Article he obtained from disclosed sources. There is no allegation that he did

otherwise. Along these same lines, he did not "suppress information." In fact, the Appellants completely fail to identify the information that Rosenberg supposedly suppressed.

The Appellants also fail to cite to any case law where a court found that the failure of a reporter to "offer an innocent interpretation" of accurately reported source information was evidence that the reporter harbored serious doubts about the information he reported.

The cases the Appellants do cite in this section of their brief provide no support for their arguments. First, the Appellants cite to the case of *Rebozo v. Washington Post Co*. In *Rebozo*, the *Washington Post* published a story about President Richard Nixon's financial advisor and friend, Charles Rebozo. Rebozo v. Washington Post Co., 637 F.2d 375, 376 (5th Cir. 1981). Rebozo was the president and chairman of the board for Key Biscayne Bank in Miami, Florida. Id.

The backdrop for the story was a lawsuit filed against the Key Biscayne Bank alleging that the Bank and/or Rebozo had knowingly cashed certain shares of stock that were allegedly stolen from E.F. Hutton's safe in New York. Id. Apparently, these shares had been used as collateral for a loan with Key Biscayne Bank, and were therefore liquidated when the loan was not repaid. Id. At issue was whether Rebozo knew that the stock had been stolen prior to its liquidation and whether he was the one who sold the stock.

The *Washington Post* reporter, Ronald Kessler, reviewed the deposition of an investigator, George Riley, who met with Rebozo regarding the missing stock. Id. In that deposition testimony, there was some ambiguity as to whether Riley told Rebozo that the stock was stolen, missing, or both. Id. at 377.

After reading the deposition transcript, Kessler called Riley to discuss his testimony. Id. In this conversation, he never asked Riley if his deposition testimony was accurate or to clarify the ambiguities. Id.

Prior to publishing the story, Kessler also sent a memo to his editor wherein he noted that there was some ambiguity as to who actually cashed the stock- the bank or Rebozo himself. Id.

Despite these ambiguities, the *Washington Post* subsequently ran a story which said that Rebozo cashed the stock after Riley told him it was stolen. Id. Rebozo sued the *Washington Post* for defamation claiming that the statements that he was told the stock was stolen and then cashed the stock was false. Id. at 378.

The trial court granted summary judgment, finding that there were no issues of material fact concerning whether the *Washington Post* had acted with actual malice.

The Fifth Circuit, however, reversed the district court's decision. The Court found that the failure to clarify the ambiguities in the testimony of Riley, coupled with the memo evidencing Kessler's own doubts as to who actually cashed the stock,

was enough to create issues of material fact as to actual malice, i.e. whether or not Kessler entertained serious doubts as to what he reported was true. Id. at 382.

*Rebozo* is completely different from the case at bar. First, there is no allegation that Rosenberg misstated the information he obtained from his sources or that the source information he cited was somehow ambiguous. And of course, there is no allegation or evidence that Rosenberg entertained serious doubts as to the truth of what he reported. Rosenberg simply reported the facts.

The other case that the Appellants rely on is *Tavoulareas v. Piro*, 759 F.2d 90 (D.C. Cir. 1985). This opinion is of no help to the Appellants since it was vacated on re-hearing. Regardless, whether or not a plaintiff can prove a reporter's subjective state of mind based on circumstantial evidence (such as suppression of information) suggesting that the Article is "slanted," is of no import in the case at bar. There is no evidence, circumstantial or otherwise, that Rosenberg suppressed anything. In fact, the Article quoted Gov. Bryant's text messages and public statements at length, and even included direct links to his interview with *Mississippi Today* which contained his denials, i.e. his own "innocent interpretations" of his text messages.

### 2.    The Article is entirely plausible.

The Appellants pled no facts in their Complaint which support a conclusion that the Article was "inherently implausible." Instead, they maintain "only a reckless

person would believe" Gov. Bryant was involved "in a criminal conspiracy that state and federal prosecutors have ignored."  This is an almost laughable statement when one considers that Bryant himself told the press that he knew the text messages at issue make it look like he knew public funds were illegally diverted.

In any event, the Appellants make three (3) allegations in this section of their Brief that they claim show the Article to be inherently improbable. The first is the allegation that the Article failed to include a quote from Mississippi State Auditor Shad White that "there is no evidence that Gov. Bryant engaged in wrongdoing." As the District Court correctly pointed out, White never said that.[22]

Next, the Appellants point to the "conclusions reached by MDHS." While it is unclear exactly what the Appellants say MDHS concluded, at the time the Article was published, it is undisputed that the MDHS investigation was still underway.  So, logically the failure to report on something that had not yet happened cannot support an allegation of actual malice.

Finally, the Appellants point to the alleged failure of another publication, *Mississippi Today*, to secure a quote from an "expert" that Gov. Bryant engaged in illegal conduct. However, there is no allegation in the Complaint or its exhibits

---

[22] <mark>ROA.956</mark>

which would indicate that Rosenberg was aware of *Mississippi Today's* efforts to secure a quote from an "expert."

**3.      The Appellees are under no obligation to write a story that makes Gov. Bryant look good.**

The Appellants claim that the Appellees knew the Article would harm Gov. Bryant, which they argue supports a claim of actual malice. Obviously, such an allegation could not possibly support a claim of actual malice since this would mean that the media could never publish a story that scrutinizes the actions of a public figure.

And of course, it is Gov. Bryant's fault that he engaged in direct dealings with criminals. In other words, it is Gov. Bryant's own words and actions that caught him up in the largest political corruption scandal in the history of Mississippi. If he has been harmed by the public learning of his actions, he has only himself to blame.

**4.      The Failure to include Shad White's comments do not support an allegation of actual malice.**

This section of the Appellants' brief is misleading. The "evidence" of actual malice they point to is not a statement from Shad White. The statement comes from an editorial from *Mississippi Today*.[23] The author, Adam Ganucheau, stated that in Shad White's interview with *Mississippi Today* he said that he "had not seen evidence that Bryant broke any law."

---

[23] ROA.178

Again, however, there is no allegation in the Complaint or exhibits that Rosenberg was aware of Ganucheau's editorial. For this reason, it is impossible for this allegation to support a claim for actual malice.

### 5. The Appellees are not required to include Gov. Bryant's preferred sources in the Article.

The Appellants allege that the failure of the Article to include quotes from Gov. Bryant, VanLandingham, and Chris Freeze is evidence of actual malice. It is not clear what exact quotes the Appellants are claiming should have been included in the Article. Regardless, there is no requirement that the Appellees include Gov. Bryant's preferred sources. See Jacoby v. Cable News Network, Inc., (holding that plaintiff "is not entitled to having Defendants credit his preferred sources of information or structure its articles in the manner that he desires." No. 21-12030, 2021 WL 5858569, *5 (11th Cir. Dec. 10, 2021) (per curiam).

In any event, Rosenberg did report on Gov. Bryant's denials. The Article cites VanLandingham's statement that Gov. Bryant "was 'straight up' and never accepted any stock." Rosenberg himself reported that Bryant never accepted any stock. The Article also included Governor Bryant's denials and twice linked to his first-person interview with *Mississippi Today*.[24]

---

[24] ROA.960

### 6. The Article accurately reported issues concerning the credibility of Burnett and Davis.

In this section of their Brief, the Appellants say that two sources for the Article have serious credibility issues. As to Carol Burnett, the Appellants claim that her statements were questionable because she worked at MDHS prior to Gov. Bryant's stint as Governor. However, Rosenberg stated this very fact in the Article.[25]

Furthermore, Burnett had worked at MDHS in the past and still had a relationship with MDHS during Gov. Bryant's term through her nonprofit business. So, it is quite a stretch to say that her comments contained in the article are based on "rootless speculation."

As to Davis, Rosenberg expressly included the facts that indicate possible bias on Davis' part. The Article noted that Davis told family members Gov. Bryant had fired him, and that he had received a prison sentence for his role in diverting the TANF funds.

### 7. The Appellees' investigation was entirely adequate.

The Appellants next argue that there were steps that Rosenberg should have taken in his investigation. They argue that Rosenberg could have sought a "follow-up interview" with White and others. Of course, they fail to point out how the failure

---

[25] ROA.39-40

to do so is evidence of actual malice. They even fail to point out exactly what these additional interviews would have revealed.

**8.      The Appellees did not deliberately distort facts.**

Next, the Appellants claim that Rosenberg "distorted facts." However, they fail to allege any facts in their Complaint or the exhibits that Rosenberg distorted facts. This allegation is completely conclusory. The Appellants do not even pretend otherwise.

**9.      The Appellees did not follow a preconceived storyline.**

The Appellants argue that the Appellees had a preconceived story line and then intentionally set out to conform the evidence to this preconceived story line.

This allegation, just like all the other allegations, is conclusory. The Appellants offer no statements of fact that would support this allegation.

**10.     The Appellees refusal to retract the Article is not evidence of actual malice.**

Finally, the Appellants state that the fact that the Appellees did not retract the Article is evidence of actual malice. At this point, it is obvious that the Appellants are grasping at straws. There is no allegation in this case that the Appellees made knowingly false statements.

The cases cited by the Appellees in support of this argument, such as *Golden Bear Distribution System* and *National Association of Government Employees, Inc.*,

deal with cases where the media company failed to retract a story that it knew was false.

**E.    The District Court's denial of the Appellants' request to file an Amended Complaint was correct.**

The District Court denied the Appellant's request for leave to amend because it was "futile."[26]  This was clearly the right decision.

The District Court was well within its rights to deny a motion for leave to amend based on futility.  <u>Porretto v. City of Galvenston</u>, 113 F.4th 469, 491 (5th Cir. 2024. First, the Appellants did not file a motion for leave with the proposed amended complaint attached, which is the typical course of practice under Fed. R. Civ. P. 15 (a)(2). For this reason, there is no way to know exactly what the Appellants think they could plead differently to survive a motion to dismiss.  It appears that this request was merely an afterthought since it is contained in a footnote.

Furthermore, they even fail to state in their Appellant's Brief what they would plead differently if given the opportunity to do so. The reason they failed to do this is because there is nothing they could possibly plead that would plausibly demonstrate that the Appellees had serious doubts about the truth of the Article. For this reason, allowing the Appellants to file an amended complaint would be the height of futility.

---

[26] ROA.970

Since an amendment would be futile, the dismissal under Fed. R. Civ. P. 12 (b)(6) should be with prejudice. <u>HCB Fin Corp. V. McPhearson</u>, 8 F.4th 335-46 (5th Cir. 2021).

## CONCLUSION

For the above reasons, the District Court's dismissal of this case with prejudice should be affirmed in all respects.

Respectfully submitted,

<u>s/ S. Ray Hill, III</u>
S. Ray Hill, III (MS Bar No. 100088)
McAngus Goudelock & Courie
119 N. 9th Street
Oxford, MS 38655
(662) 281-7843
ray.hill@mgclaw.com

*Attorney for Michael Rosenberg*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on all counsel of record *via* the

Court's ECF filing system in compliance with Fed. R. Civ. P. 25.

SO CERTIFIED, this the 24th day of July, 2025.


<u>s/ S. Ray Hill, III</u>
S. Ray Hill, III

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. R. 32(a)(7)(B) as it contains 6,208 words, including footnotes.

2.      The body of the brief meets the typeface requirements of Fed. R. App. R. 32(a)(5) by using a proportionally spaced typeface with serifs and a 14-point font. The footnotes satisfy the typeface requirement of 5th Cir. R. 32.1 as they employ a proportionally spaced typeface and a 12-point font.

3.      This brief meets the typestyle requirement of Fed. R. App. P. 32(a)(6) as it uses a plain, roman style called Times New Roman.

**RESPECTFULLY SUBMITTED**, on this 24th of July, 2025.

s/ S. Ray Hill, III
S. Ray Hill, III (MS Bar No. 100088)
McAngus Goudelock & Courie
119 N. 9th Street
Oxford, MS 38655
(662) 281-7843
ray.hill@mgclaw.com

*Attorney for Michael Rosenberg*
