CASE NO. 25-60196

# In the United States Court of Appeals
# For the Fifth Circuit

PHIL BRYANT; DEBORAH BRYANT,
*Plaintiffs-Appellants*,

*v.*

MICHAEL ROSENBERG; THE ARENA GROUP HOLDINGS, INCORPORATED, "ARENA",
*formerly known as* THEMAVIN, INCORPORATED,
*Defendants-Appellees*

On Appeal from the United States District Court
for the Southern District of Mississippi, Northern Division,
Civil Action No. 3:24-cv-00260-KHJ-MTP

## PETITION FOR PANEL REHEARING

William M. Quin II (MS Bar No. 10834)
W. Thomas McCraney, III (MS Bar No. 10171)
**MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone:  601-707-5725
Facsimile:  601-510-2939
Emails:  wquin@mmqnlaw.com
tmccraney@mmqnlaw.com

**Attorneys of record for Plaintiffs-Appellants,
Former Mississippi Governor Phil Bryant and
former First Lady Deborah Bryant**

# TABLE OF CONTENTS

Table of Contents ...................................................................................................i

Table of Authorities ........................................................................................ iii

Introduction ......................................................................................................1

Points of Law and Fact .....................................................................................1

Argument...........................................................................................................4

    I.      The complaint.................................................................................4

    II.     Plausible inferences of actual malice .......................................5

         A.     Speculation....................................................................5

         B.     Obvious ambiguity regarding the volleyball facility ...............6

         C.     No source .....................................................................6

         D.     Contradictory evidence .................................................7

         E.     Bryant's denial regarding the volleyball facility .......................7

         F.     Obvious ambiguity regarding Prevacus.....................................7

         G.     Misrepresented evidence.................................................8

         H.     Bryant's denial regarding Prevacus .............................................8

         I.     Failure to interview a material witness ...................................9

         J.     Sensationalism .................................................................9

         K.     Public statements from law enforcement...................................9

         L.     Inherent improbability .................................................10

M.      Knowledge of the harm ................................................11

N.      Refusing to retract ........................................................12

III.     State Auditor Shad White ................................................12

IV.     Bryant's interview ...........................................................14

A.      The interview .................................................................14

B.      The hyperlinks ...............................................................15

V.      Leave to amend ...............................................................16

Conclusion ................................................................................17

Signature of Counsel ................................................................17

Certificate of Service ...............................................................18

Certificate of Compliance .......................................................19

**Cases**

*Adams v. Columbia/HCA of New Orleans, Incorporated*,
No. 22-30389, 2023 WL 2346241 (5th Cir. Mar. 3, 2023) .......................................4

*Amin v. NBCUniversal Media, LLC*,
No. 5:21-cv-56, 2024 WL 3188768 (S.D. Ga. June 26, 2024).................................5

*Batson v. Time, Inc.*,
298 So. 2d 100 (La. Ct. App. 1st Cir. 1974), *cert. denied*,
299 So. 2d 803 (La. 1974) .....................................................................................10

*Blanke v. Time, Inc.*,
308 F. Supp. 378, 380 (E.D. La. 1970).................................................................9

*Byrd v. Bates*,
220 F.2d 480 (5th Cir. 1955)................................................................................16

*Curtis Publishing Co. v. Butts*,
388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).......................................9, 11

*Deep South Communications, LLC v. Fellegy*,
652 F. Supp. 3d 636 (M.D. La. 2023).................................................................16

*Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.*,
708 F.2d 944 (5th Cir. 1983) ...............................................................................12

*In re Life Partners Holdings, Inc.*,
926 F.3d 103 (5th Cir. 2019) .............................................................................4, 5

*Lohrenz v. Donnelly*,
350 F.3d 1272 (D.C. Cir. 2003)....................................................................7, 8, 15

*Nunes v. NBCUniversal Media, LLC,*
643 F. Supp. 3d 403, 420 (S.D. N.Y. 2022) .......................................................6

*Palmtag v. Republican Party of Nebraska*,
999 N.W.2d 573, 593-95 (Neb. 2004) ...............................................................7

*Rebozo v. Washington Post Co.*,
637 F.2d 375 (5th Cir. 1981), *cert. denied*, 454 U.S. 964, 102 S.Ct. 504,
70 L.Ed.2d 379 (1981) ............................................................6, 7, 8, 15

*Santander v. Salazar*,
133 F.4th 471 (5th Cir. 2025) ...............................................................13, 14

*St. Amant v. Thompson*,
390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)...............................................11

*Tah v. Global Witness Publishing, Inc.*,
991 F.3d 231 (D.C. Cir. 2021) ...............................................................7, 8, 15

*Time, Inc. v. Ragano*,
427 F.2d 219 (5th Cir. 1970) ...............................................................7

*US Dominion v. Powell*,
554 F. Supp. 3d 42 (D. D.C. 2021)...............................................................11

*Westmoreland v. CBS*,
596 F. Supp. 1170 (S.D. N.Y. 1984) ...............................................................8

*Zerangue v. TSP Newspapers, Inc.*,
814 F.2d 1066 (5th Cir. 1987) ...............................................................7, 12

**Rules**

Fed. R. Civ. P. 10(c).......................................................................4

Fed. R. App. P. 25(b) ...................................................................18

Fed. R. App. P. 25(c) ...................................................................18

Fed. R. App. P. 32(a)(5)...............................................................19

Fed. R. App. P. 32(a)(6)...............................................................19

Fed. R. App. P. 32(f).....................................................................19

Fed. R. App. P. 40(d)(3)(A) ...................................................................19

5th Cir. R. 32.1 ...................................................................................19

5th Cir. R. 40.2.5 ...............................................................................19

**<u>Treatise</u>**

5B Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1357 (3rd ed. 2016)............................................16

## INTRODUCTION

Former Mississippi Governor Phil Bryant and his wife, Deborah, filed this action alleging that sportswriter Michael Rosenberg defamed Governor Bryant[1] in a *Sports Illustrated* article[2] ("Article"). The district court granted motions to dismiss and denied leave to amend ("Order").[3] The Court affirmed the Order in a *per curiam* opinion.[4]

## POINTS OF LAW AND FACT

The panel misapprehended and overlooked the following facts and law when it rendered the Court's opinion:

1.      The Bryants properly pleaded and incorporated facts in their complaint.

2.      Numerous plausible inferences of actual malice arise from the facts pleaded in the complaint and its incorporated exhibits, including Rosenberg's –

    a.      reliance on baseless speculation as the sole basis for his claim that Governor Bryant conspired with Brett Favre, MDHS Executive Director John Davis, and Mississippi Community Education Center ("MCEC") Director Nancy New to direct $4 million in welfare funds to pay for the

---

[1] ROA.6-30.

[2] ROA.31-76.

[3] ROA.949-971.

[4] ECF Doc. #70-1.

construction of a volleyball facility at the University of Southern Mississippi ("USM"),

b. interpretation of obvious ambiguity to support the claim that Bryant assured Favre that he would direct additional money to the project,

c. identification of no source to support the claim that Bryant's texts to his staff attorney, Favre, newly-appointed Mississippi Department of Human Services ("MDHS") Executive Director Chris Freeze, and USM President Rodney Bennett were a ruse to lead future investigators to believe he was only an "honest occasional advisor" to Favre,

d. disregard of objective evidence proving that Bryant did not conspire to direct $4 million to the project,

e. disregard of Bryant's denial that he had directed funds to the project while possessing evidence that he had not,

f. interpretation of obvious ambiguity to support the claim that Bryant directed or authorized the direction of welfare funds to Prevacus,

g. misrepresentation of language in texts between Bryant and Prevacus Chief Executive Officer Jake VanLandingham to make it appear that Bryant had agreed to accept stock when, in fact, he had not,

h. disregard of Bryant's denial that he had agreed to accept stock while possessing evidence that he had not,

i. failure to interview Prevacus investor, Poncho James, whom he knew had spoken with Bryant and VanLandingham about a stock offer after the text exchange referenced in the Article,

j. sensationalism,

k. disregard of Mississippi State Auditor Shad White's statements that he had not seen evidence of Bryant directing Davis to make specific payments or breaking any law,

l. disregard of the inherent improbability of the Article's claims,

m. knowledge of the harm that the Article would cause Bryant, and

n. refusal to retract despite possessing objective evidence of the Article's falsity.

3. The plausible inferences that White had not seen evidence of Bryant's wrongdoing after conducting a fair investigation, White was not biased, and White knew Bryant had not directed welfare funds to the volleyball facility project and wanted him to investigate the potential liability of others.

4. Bryant's interview with *Mississippi Today* reporter Anna Wolfe and the Article's hyperlinks do not negate an inference of actual malice.

5. The court should have granted the Bryants leave to amend.

## ARGUMENT

## I. The complaint

The complaint[5] attaches an amended complaint in another case ("SAC")[6] that discusses a third filing ("Response").[7] The Bryants attached the Response to their response to the motions to dismiss.[8] The facts in these documents are part of the complaint. Fed. R. Civ. P. 10(c); *Adams v. Columbia/HCA of New Orleans, Incorporated*, No. 22-30389, 2023 WL 2346241, at *3 n.4 (5th Cir. Mar. 3, 2023).

Citing *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 117 n.6 (5th Cir. 2019), the Order noted that the complaint does not reference "*any* particular factual content within the 200-page state-court complaint."[9] However, this Court does not require plaintiffs to restate the facts already contained in their exhibits in the body of their complaint. Instead, it has generally cautioned that "lengthy exhibits" do not render otherwise deficient pleadings acceptable, and noted that "in complex cases…, documents that support a plaintiff's claims and aggregate relevant information can

---

[5] Rosenberg relied on information provided by New (*see* ROA.11 at ¶ 3.12), but he did not quote her or rely on her for the claims against Bryant. The Court can infer that New either did not provide information supporting Rosenberg's narrative or that her information was unreliable.

[6] ROA.7; ROA.78-281.

[7] ROA.189-190.

[8] ROA.378-835; ROA.836-880.

[9] ROA.958-959 n.4 (emphasis in original).

be helpful attachments." *Id*. Here, the exhibits outline evidence supporting plausible inferences of actual malice.

## II. Plausible inferences of actual malice

As discussed in the Petition for Rehearing *En Banc* ("PREB"),[10] the evidence underlying the Article's claims against Bryant is limited to texts sent or received by Bryant regarding Prevacus, the volleyball facility, or other matters; texts between Favre and New regarding the facility; a speculative quote from Carol Burnett; a cryptic quote from Davis; and a barebones calendar invite sent by Davis. The Opinion ignores plausible inferences of actual malice arising from the reliance on this evidence, including:

### A. Speculation

Rosenberg's only source for his claim that Bryant directed $4 million to the volleyball facility project is Carol Burnett, who lacks firsthand knowledge of the relevant events.[11] Reliance on information from someone lacking firsthand knowledge supports a plausible inference of actual malice. *Amin v. NBCUniversal Media, LLC*, No. 5:21-cv-56, 2024 WL 3188768, at *26 (S.D. Ga. June 26, 2024).[12]

---

[10] PREB at 2-4.

[11] PREB at 6.

[12] The Order states that Bryant did not provide facts showing "Rosenberg had a 'high degree of awareness'" that Burnett's speculation "was probably false." ROA.967. This is untrue. The SAC alleges that Burnett "was not involved in relevant events," "has no first-hand knowledge of relevant circumstances," and "did not work in MDHS during Bryant's tenure." ROA.173.

## B. Obvious ambiguity regarding the volleyball facility

Rosenberg's only sources for his claim that Bryant assured Favre that he would direct additional funds to the project are two ambiguous texts.[13] A reporter's resolution of "obvious ambiguity… in favor of the most potentially damaging alternative creates a jury question on whether the publication was indeed made without serious doubt as to its truthfulness." *Rebozo v. Washington Post Co.*, 637 F.2d 375, 381-82 (5th Cir. 1981), *cert. denied*, 454 U.S. 964, 102 S.Ct. 504, 70 L.Ed.2d 379 (1981).[14] This is precisely what occurred here.

## C. No source

Rosenberg did not identify a source to support his claim that Bryant sent texts that were calculated to mislead future investigators into believing he was an "honest occasional advisor."[15] Publishing such an outrageous claim without a source supports a plausible inference of actual malice. *Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 420 (S.D. N.Y. 2022).

---

[13] PREB at 6-8.

[14] Pointing to the phrase "company package," the Order finds that any misinterpretation of it would be "understandable" and not show actual malice. ROA.967. However, the issue is whether Rosenberg fairly interpreted other language and relied on other sources to support his claims that Bryant conspired to direct millions of welfare funds to the volleyball facility project and agreed to accept Prevacus stock. He did not.

[15] PREB at 8.

## D. Contradictory evidence

Rosenberg knew the evidence revealed not only that Bryant did not conspire to direct welfare funds to the volleyball facility project, but that he repeatedly refused to do so.[16] Rosenberg's publication of defamatory statements that were contradicted by information known to him gives rise to a plausible inference of actual malice. *Time, Inc. v. Ragano*, 427 F.2d 219, 221 (5th Cir. 1970); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987); *Palmtag v. Republican Party of Nebraska*, 999 N.W.2d 573, 593-95 (Neb. 2004).

## E. Bryant's denial regarding the volleyball facility

Rosenberg disregarded Bryant's denial that he had directed welfare funds to the project, even though he knew there was objective evidence supporting it.[17] This gives rise to an inference of actual malice. *Rebozo*, 637 F.2d at 377; *Tah v. Global Witness Publishing, Inc.*, 991 F.3d 231, 242 (D.C. Cir. 2021) (quoting *Lohrenz v. Donnelly*, 350 F.3d 1272, 1285 (D.C. Cir. 2003)).

## F. Obvious ambiguity regarding Prevacus

Rosenberg relied on vague and ambiguous texts, a cryptic quote, and a calendar invite to support his claim that Bryant directed welfare funds to Prevacus.[18]

---

[16] PREB at 8-11.

[17] PREB at 12.

[18] PREB at 12-14.

His reliance on these sources supports a plausible inference of actual malice. *Rebozo*, 637 F.2d at 381-82.

## G. Misrepresented evidence

Rosenberg misrepresented a text exchange to make it appear that VanLandingham offered stock and that Bryant agreed to accept it, when in fact neither event occurred.[19] The Court can plausibly infer that Rosenberg knowingly or recklessly concealed information to make the exchange seem more convincing or condemnatory than it is, *Westmoreland v. CBS*, 596 F. Supp. 1170, 1174 (S.D. N.Y. 1984), and that he interpreted rhetorical hyperbole ("get on it hard") in the most damaging way for Bryant, giving rise to a plausible inference of actual malice. *Rebozo*, 637 F.2d at 381-82.

## H. Bryant's denial regarding Prevacus

Rosenberg ignored Bryant's denial that he had agreed to accept Prevacus stock[20] despite knowing that Bryant's text exchange with VanLandingham did not reveal an offer or acceptance. This gives rise to a plausible inference of actual malice. *Rebozo*, 637 F.2d at 377; *Tah*, 991 F.3d at 242; *Lohrenz*, 350 F.3d at 1285.

---

[19] PREB at 14-15. Although the Article reports that Bryant did not accept stock (*see* ROA.960), the issue is whether he *agreed to accept* stock without consummating the deal. The texts do not reflect an agreement. Bryant denied agreeing, and VanLandingham confirmed that no agreement was reached, stating they were "probably working towards" one. ROA.226.

[20] PREB at 15-16.

## I. Failure to interview a material witness

Rosenberg failed to interview Poncho James, whom he knew had spoken with Bryant and VanLandingham after Bryant purportedly agreed to accept stock.[21] The Court can plausibly infer that Rosenberg did not contact James to avoid the truth. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 157, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

## J. Sensationalism

Rosenberg accused Bryant of conspiring to defraud the state, agreeing to accept payment for his efforts, and attempting to conceal his actions from law enforcement. This sensationalism proves actual malice. *Blanke v. Time, Inc.*, 308 F. Supp. 378, 380 (E.D. La. 1970).

## K. Public statements from law enforcement

In an interview, White said that after a two-year investigation, he had not seen evidence of Bryant directing Davis "to make specific payments to specific programs," and "he had not seen evidence that Bryant broke any law."[22] Rosenberg's disregard of White's statements, combined with his failure to credit the fact that White did not accuse Bryant of wrongdoing in the years after his interview, proves

---

[21] PREB at 16.

[22] PREP at 17.

he acted with actual malice. *Batson v. Time, Inc.*, 298 So. 2d 100, 108 (La. Ct. App. 1st Cir. 1974), *cert. denied*, 299 So. 2d 803 (La. 1974).

### L. Inherent improbability

White arrested Davis, Nancy New, Zach New, and a few others on February 4, 2020. On October 21, 2021, he issued written demands to recover $77 million in misspent welfare funds. He did not issue a demand to Bryant despite possessing texts between Davis and Bryant, as well as between Bryant, Favre, and VanLandingham.[23]

The News pleaded guilty to state and federal felonies on April 20 and 22, 2022. Davis pleaded guilty to state and federal felonies on September 22, 2022. The News and Davis were required to report information about Bryant to prosecutors as a condition of their pleas. Federal and state investigators had not accused Bryant of a crime at the time of publication and have not since.[24] The federal investigation may have "remained ongoing and confidential"[25] at the time of publication, but there was no evidence suggesting Bryant was a target.

On May 9, 2022, MDHS filed suit against 38 defendants. It did not sue Bryant. Later, MDHS terminated its attorney, Brad Pigott, and replaced him with Jones Walker LLP. MDHS filed an amended complaint on December 13, 2022. It did not

---

[23] ROA.140-141; ROA.167-170.

[24] PREB at 18.

[25] ROA.965.

add Bryant as a defendant.[26] Far from being "cut short,"[27] the MDHS case remains pending.

Rosenberg should have inferred that Bryant's involvement in a criminal conspiracy, ignored for years (and still ignored nearly a year later when the retraction demand was received) by the state auditor, MDHS, the FBI, and state and federal prosecutors, is so inherently improbable that only a reckless person would believe it. White's interview underscores this improbability. *US Dominion v. Powell*, 554 F. Supp. 3d 42, 63-64 (D. D.C. 2021) (citing *St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)).

## M. Knowledge of the harm

Concurring in *Butts*, 388 U.S. at 170, Chief Justice Warren noted that the publisher "proceeded on its reckless course with full knowledge of the harm that would likely result from publication of the article." Rosenberg knew the harm he would cause Bryant, giving rise to a plausible inference of actual malice.

---

[26] PREB at 19; MDHS alleges that Davis, Nancy New, Zach New, Jess New, Favre, VanLandingham, MCEC, N3 Holdings, LLC, Prevacus, and PreSolMD are liable for claims relating to Prevacus. *Mississippi Dep't of Human Svs. v. Davis, et al.*, No. 25CI1:22-cv-286-EFP (Hinds Cty. Cir. Ct.) [MEC Doc. #197] (filed Dec. 13, 2022) ("MDHS Amended Complaint") at 21-24, 57, 66, 72-73. The claims relating to the volleyball facility are discussed *infra*.

[27] ROA.965.

## N. Refusing to retract

On April 11, 2024, Bryant demanded that the defendants retract the Article. The defendants had ample time to reassess the Article's truthfulness and retract its claims, but they did not.[28] The Court can reasonably infer from their refusals that the defendants published the Article with actual malice. *Zerangue*, 814 F.2d at 1071 (citing *Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 950 (5th Cir. 1983)).

## III. State Auditor Shad White

The Order does not credit plausible inferences that Rosenberg knew White had not seen evidence that Bryant directed Davis to make specific payments or to break any law after conducting a two-year investigation,[29] was not biased,[30] and wanted Pigott to discover that Bryant had refused to direct welfare funds to the volleyball facility project.[31]

First, the court observed that White did not say in his interview that there was "no evidence of Bryant's wrongdoing."[32] However, *Mississippi Today* has acknowledged that White said something just as impactful. After investigating for

---

[28] PREB at 20.

[29] ROA.959.

[30] ROA.960.

[31] ROA.960.

[32] ROA.959.

two years, White said he had not seen evidence of Bryant directing Davis "to make specific payments to specific programs,"[33] and "not seen evidence that Bryant broke any law."[34] Equally as important, White did not accuse Bryant of wrongdoing in the 19 months between his interview and the Article's publication, and he has not since.[35]

Second, the court stated that Rosenberg noted that White may have been biased.[36] However, the court did not acknowledge that White may not have been biased, a fair inference given that MDHS and state and federal prosecutors had not accused Bryant of wrongdoing after reviewing the same information and having unfettered access to cooperating witnesses. The court erred by crediting the inference that does not favor Bryant and disregarding the one that does. *Santander v. Salazar*, 133 F.4th 471, 477 (5th Cir. 2025).

Third, the court inferred that White "thought it worthwhile to investigate any potential connections between Bryant and the welfare scandal" from his statement that it was "a mistake" to fire Pigott.[37] An alternative inference is that White already

---

[33] See the article cited at ROA.122 n.23.

[34] ROA.178.

[35] It should make no difference that White's interview occurred before texts from his investigative files were leaked to Wolfe and before Bryant voluntarily released additional texts. See ROA.959. As discussed in the PREB, the evidence supporting the Article's claims against Bryant is insufficient, and the fact that state and federal authorities have not pursued charges against Bryant since the public release of this information underscores this point.

[36] ROA.960.

[37] ROA.960.

knew that Bryant had refused to direct welfare funds to the volleyball facility project (having already reviewed Bryant's texts in his investigation), and wanted Pigott to investigate others – an inference supported by the fact that MDHS later amended its suit to add volleyball facility-related claims against Davis, Favre, former MDHS Deputy Executive Director Garrig Shields, former MDHS Deputy Administrator Jacob Black, Nancy and Zach New, Christi Webb, MCEC, and Family Resource Center of North Mississippi, Inc.[38] It did not sue Bryant. The court erred by failing to credit an inference favoring Bryant. *Santander*, 133 F.4th at 477.

## IV. Bryant's interview

## A. The interview

Bryant repeatedly denied agreeing to accept Prevacus stock during his interview,[39] and discussed a conference call with VanLandingham and investor Poncho James, held after Bryant's term ended. At the end of the call, VanLandingham said, "'And oh, by the way, we need to talk about some stock.' And I just said, 'Well, you know, we'll get together later on.' And I never called him back."[40] The following exchange ensued:

**Wolfe**: I mean, this is really serious. It appears as if you've helped this company along in your last year in office –

---

[38] MDHS Amended Complaint at 16-21, 50, 55-57, 63-64, 72, 74, 77-78.

[39] ROA.131 and n.28 (referred to as "Interview"); Interview at 3-4, 11.

[40] Interview at 11.

**Bryant**: I understand, I understand.

**Wolfe**: - and then answered affirmatively when asked about taking stock.

**Bryant**: Yeah.

**Wolfe**: *And the fact that you never did is because those arrests were made before you were able to meet to "seal the deal."*

**Bryant**: *No, no, no, no. I had time in between there. Give me some dates*.[41]

Wolfe reminded Bryant that his term ended on January 15, 2020, two weeks before White's arrests, prompting Bryant to observe that he had two weeks to cut a stock deal with Prevacus after leaving office and did not.[42]

### B. The hyperlinks

Publishers cannot negate an inference of actual malice by reporting a plaintiff's denials when they know of independent evidence confirming the denial. *Rebozo*, 637 F.2d at 377; *Tah*, 991 F.3d at 242; *Lohrenz*, 350 F.3d at 1285. Here, the defendants knew that Bryant's texts did not show him agreeing to accept stock. Therefore, the Article's hyperlinks to Bryant's interview do not "tend[] to negate a showing of actual malice."[43]

---

[41] Interview at 11 (emphasis added). The Order omits the emphasized portion, making it appear that Bryant admitted agreeing to accept stock when, in fact, he did not. ROA.953. It then juxtaposes an admission Bryant made regarding a matter not at issue in this suit – that he should have realized Prevacus had received state funds – to buttress its opinion that "Bryant's admissions undermine a showing of actual malice." ROA.961. In this regard, the Order is a house of cards.

[42] Interview at 11.

[43] ROA.960-61.

## V. Leave to amend

This Court has long recognized that "a court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief may be granted." *Deep South Communications, LLC v. Fellegy*, 652 F. Supp. 3d 636, 689 (M.D. La. 2023) (quoting *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955)) (cleaned up). The leading treatise on federal procedure advises that a "wise judicial practice" is "to allow at least one amendment" because of the difficulty associated with determining whether a plaintiff can state a claim for relief. *Id.* (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3rd ed. 2016)). Given the "wise judicial practice" of allowing an amendment, the complexity of dissecting the Article, and the volume of exhibits, the court should have allowed Bryant to file an amended complaint that clearly sets forth the factual basis of his actual malice allegations.

<u>**CONCLUSION**</u>

The panel erred by adopting the district court's misconstruction of facts and disregarded well-recognized, plausible inferences of actual malice favoring Bryant. It should grant rehearing and reverse.

**RESPECTFULLY SUBMITTED,** on this 17th of March, 2026.

**RESPECTFULLY SUBMITTED:**

By:   /s/ *William M. Quin II*
       William M. Quin II (MS Bar No. 10834)
       W. Thomas McCraney, III (MS Bar No. 10171)
       **MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
       602 Steed Road, Suite 200
       Ridgeland, Mississippi 39157
       Telephone:  (601) 707-5725
       Facsimile:  (601) 510-2939
       Email:      wquin@mmqnlaw.com
                tmccraney@mmqnlaw.com

       **Attorneys of record for Plaintiffs-Appellants, former Mississippi Governor Phil Bryant and former First Lady Deborah Bryant**

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served on all registered counsel of record on this day via the Court's ECF filing system in compliance with Fed. R. App. P. 25(b) and (c), and has been transmitted to the Clerk of Court.

**SO CERTIFIED,** on this 17th day of March, 2026.

/s/ *William M. Quin II*

William M. Quin II

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.      This petition complies with the type-volume limitations of Fed. R. App. P. 40(d)(3)(A) and 5th Cir. R. 40.2.5. It contains 3,845 words, including the footnotes, but excluding the sections exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1.

2.      This petition meets the typeface requirement of Fed. R. App. P. 32(a)(5). It uses a proportionally spaced serif typeface in 14-point font.

3.      The footnotes in this petition satisfy the typeface requirement of 5th Cir. R. 32.1. They employ a proportionally spaced typeface in a 12-point font.

4.      This petition meets the typestyle requirement of Fed. R. App. P. 32(a)(6). It uses a plain, roman style called Times New Roman.

**RESPECTFULLY SUBMITTED,** on this 17th of March, 2026.

/s/ *William M. Quin II*
William M. Quin II (MS Bar No. 10834)
W. Thomas McCraney, III (MS Bar No. 10171)
**MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone:  (601) 707-5725
Facsimile:  (601) 510-2939
Email:       wquin@mmqnlaw.com
                  tmccraney@mmqnlaw.com

**Attorneys of record for Plaintiffs-Appellants, former Mississippi Governor Phil Bryant and former First Lady Deborah Bryant**