# In the United States Court of Appeals For the Fifth Circuit

PHIL BRYANT; DEBORAH BRYANT,
*Plaintiffs-Appellants*,

*v.*

MICHAEL ROSENBERG; THE ARENA GROUP HOLDINGS, INCORPORATED, "ARENA",
*formerly known as* THEMAVIN, INCORPORATED,
*Defendants-Appellees*

On Appeal from the United States District Court
for the Southern District of Mississippi, Northern Division,
Civil Action No. 3:24-cv-00260-KHJ-MTP

## PETITION FOR REHEARING *EN BANC*

William M. Quin II (MS Bar No. 10834)
W. Thomas McCraney, III (MS Bar No. 10171)
**MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone:  601-707-5725
Facsimile:  601-510-2939
Emails:    wquin@mmqnlaw.com
          tmccraney@mmqnlaw.com

**Attorneys of record for Plaintiffs-Appellants,
Former Mississippi Governor Phil Bryant and
former First Lady Deborah Bryant**

I.      No. 25-60196, *Phil Bryant & Deborah Bryant v. Michael Rosenberg & The Arena Group Holdings, Inc.*, No. 3:24-cv-260-KHJ-MTP (S.D. Miss.)

II.      The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1)   **Plaintiffs-Appellants:**

Former Mississippi Governor Phil Bryant & former First Lady Deborah Bryant

2)   **Defendants-Appellees:**

Michael Rosenberg & The Arena Group Holdings, Inc., a publicly traded Delaware corporation

3)   **Attorneys of Record for the Bryants:**

William M. Quin II
W. Thomas McCraney, III
MCCRANEY MONTAGNET QUIN & NOBLE, PLLC

4)   **Attorney of Record for Michael Rosenberg:**

S. Ray Hill, III
MCANGUS GOUDELOCK & COURIE, LLC

5) **Attorneys of Record for The Arena Group Holdings, Inc.:**

Susan E. England
Paul A. Rosenthal
Katlyn M. Moseley
D. Alexander Harrell
FAEGRE DRINKER BIDDLE & REATH, LLP

**RESPECTFULLY SUBMITTED,** on this 17th of March, 2026.

By:   /s/ *William M. Quin II*
      William M. Quin II (MS Bar No. 10834)
      W. Thomas McCraney, III (MS Bar No. 10171)
      **MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
      602 Steed Road, Suite 200
      Ridgeland, Mississippi 39157
      Telephone:  (601) 707-5725
      Facsimile:  (601) 510-2939
      Email:      wquin@mmqnlaw.com
                  tmccraney@mmqnlaw.com

      **Attorneys of record for Plaintiffs-Appellants,
      former Mississippi Governor Phil Bryant and
      former First Lady Deborah Bryant**

## FRAP 40(b)(2) STATEMENT

The Court should rehear this case *en banc* because –

1.      The panel decision conflicts with *Rebozo v. Washington Post Co.*, 637 F.2d 375 (5th Cir. 1981), *cert. denied*, 454 U.S. 964, 102 S.Ct. 504, 70 L.Ed.2d 379 (1981), *Time, Inc. v. Ragano*, 427 F.2d 219 (5th Cir. 1970), *Bartimo v. Horsemen's Benev. and Protective Ass'n*, 771 F.2d 894 (5th Cir. 1985), *cert. denied*, 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986) and *Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.*, 708 F.2d 944 (5th Cir. 1983). The full Court's consideration is necessary to maintain uniformity of the Court's decisions.

2.      The panel decision conflicts with *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The full Court's consideration is necessary to ensure it credits only plausible inferences favoring Bryant, instead of balancing inferences favoring all parties and deciding which are most plausible.

3.      This case involves a question of exceptional importance: Whether a court can plausibly infer actual malice when the offending statements are supported only by baseless speculation and obvious ambiguity, and other plausible inferences of actual malice arise from the pleaded facts.

# TABLE OF CONTENTS

Certificate of Interested Persons ...............................................................i

FRAP 40(b)(2) Statement ....................................................................... iii

Table of Contents ...................................................................................iv

Table of Authorities ...............................................................................vi

Issue.........................................................................................................1

Proceedings & Disposition .....................................................................1

Facts ........................................................................................................2

    I.    Article .......................................................................................2

    II.    Complaint .................................................................................4

Argument.................................................................................................5

    I.    Standard of Review ..................................................................5

    II.    Actual Malice ...........................................................................5

        A.    Volleyball Facility...........................................................6

            1.    Relying on speculation ........................................6

            2.    Weaponizing obvious ambiguity .........................6

            3.    Publishing without a source.................................8

            4.    Disregarding contradictory evidence.................8

            5.    Disregarding Bryant's denial..............................12

        B.    Prevacus ........................................................................12

1.      Weaponizing obvious ambiguity ...................................12

2.      Intentionally misconstruing evidence ...........................14

3.      Disregarding Bryant's denial .........................................15

4.      Failing to interview a material witness ..........................16

C.      Common Facts .......................................................................17

1.      Sensationalism ...............................................................17

2.      Disregarding public statements of law enforcement ......17

3.      Inherent improbability ....................................................18

4.      Knowing the harm to Bryant ..........................................20

5.      Refusing to retract ..........................................................20

Conclusion ...........................................................................................21

Signature of Counsel ............................................................................21

Certificate of Service ...........................................................................22

Certificate of Compliance ....................................................................23

*Per Curiam* Opinion ............................................................... Attached

<strong><span style="font-variant:small-caps">Table of Authorities</span></strong>

## <u>Cases</u>

*Amin v. NBCUniversal Media, LLC*, No. 5:21-cv-56,
<u>2024 WL 3188768</u> (S.D. Ga. June 26, 2024) ........................................................6

*Ashcroft v. Iqbal*,
<u>566 U.S. 662</u>, <u>129 S.Ct. 1937</u>, <u>173 L.Ed.2d 868</u> (2009)................................... iii, 5

*Bartimo v. Horsemen's Benev. and Protective Ass'n*,
<u>771 F.2d 894</u> (5th Cir. 1985), *cert. denied*,
<u>475 U.S. 1119</u>, <u>106 S.Ct. 1635</u>, <u>90 L.Ed.2d 181</u> (1986)................................... iii, 16

*Batson v. Time, Inc.*,
<u>298 So. 2d 100</u> (La. Ct. App. 1st Cir. 1974), *cert. denied*,
<u>299 So. 2d 803</u> (La. 1974) ...............................................................................17, 18

*Blanke v. Time, Inc.*,
<u>308 F. Supp. 378</u> (E.D. La. 1970).........................................................................17

*Curtis Publishing Co. v. Butts*,
<u>388 U.S. 130</u>, <u>87 S.Ct. 1975</u>, <u>18 L.Ed.2d 1094</u> (1967)..............................16, 17, 20

*Favre v. Sharpe*,
<u>117 F.4th 342</u> (5th Cir. 2024) ...........................................................................1, 2

*Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.*,
<u>708 F.2d 944</u> (5th Cir. 1983) .............................................................................. iii, 20

*Herbert v. Lando*,
<u>441 U.S. 153</u>, <u>99 S.Ct. 1635</u>, <u>60 L.Ed.2d 115</u> (1979)...................................6

*Hutchinson v. Proxmire*,
<u>443 U.S. 111</u>, <u>99 S.Ct. 2675</u>, <u>61 L.Ed.2d 411</u> (1979)...................................6

*Lohrenz v. Donnelly*,
<u>350 F.3d 1272</u> (D.C. Cir. 2003) .....................................................................12, 16

*Nunes v. NBCUniversal Media, LLC,*
643 F. Supp. 3d 403, 420 (S.D. N.Y. 2022) ...............................................................8

*Palin v. New York Times Company*,
940 F.3d 804 (2nd Cir. 2019).......................................................................................5

*Palmtag v. Republican Party of Nebraska,*
999 N.W.2d 573, 593-95 (Neb. 2004) ........................................................................12

*Rebozo v. Washington Post Co.*,
637 F.2d 375 (5th Cir. 1981), *cert. denied*,
454 U.S. 964, 102 S.Ct. 504, 70 L.Ed.2d 379 (1981)...... iii, 5, 6, 7, 8, 12, 14, 15, 16

*Santander v. Salazar*,
133 F.4th 471 (5th Cir. 2025) ......................................................................................5

*St. Amant v. Thompson*,
390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)................................................19

*Tah v. Global Witness Publishing, Inc.*,
991 F.3d 231 (D.C. Cir. 2021)...............................................................................12, 16

*Time, Inc. v. Ragano*,
427 F.2d 219 (5th Cir. 1970) .............................................................................. iii, 12

*US Dominion v. Byrne*,
600 F. Supp. 3d 24 (D. D.C. 2022).............................................................................6

*US Dominion v. Powell*,
554 F. Supp. 3d 42 (D. D.C. 2021).............................................................................19

*Warford v. Lexington Herald-Leader Co.*,
789 S.W.2d 758 (Ky. 1990) ........................................................................................7

*Westmoreland v. CBS*,
596 F. Supp. 1170 (S.D. N.Y. 1984) ..........................................................................15

*Zerangue v. TSP Newspapers, Inc.*,
814 F.2d 1066 (5th Cir. 1987) ...................................................................6, 12, 16, 20

## Rules

Fed. R. App. P. 25(b) ...........................................................................................22

Fed. R. App. P. 25(c) ...........................................................................................22

Fed. R. App. P. 32(a)(5) .......................................................................................23

Fed. R. App. P. 32(a)(6) .......................................................................................23

Fed. R. App. P. 32(f) ............................................................................................23

Fed. R. App. P. 40(b)(2) .................................................................................. iii, 23

Fed. R. App. P. 40(d)(3)(A) .................................................................................23

Fed. R. Civ. P. 12(b)(6) ........................................................................................5

5th Cir. R. 28.2.1 ....................................................................................................i

5th Cir. R. 32.1 ...................................................................................................23

5th Cir. R. 40.2.5 ................................................................................................23

<u>**ISSUE**</u>

Whether the panel decision conflicts with U.S. Supreme Court and Fifth Circuit authorities bearing on whether Bryant plausibly pleaded actual malice.

<u>**PROCEEDINGS & DISPOSITION**</u>

Former Mississippi Governor Phil Bryant and his wife, Deborah, filed suit on May 9, 2024.[1] They attached to their complaint: (1) a *Sports Illustrated* article published on May 18, 2023 ("Article");[2] (2) an amended complaint ("SAC") in a state court action;[3] (3) demands for retraction;[4] and (4) responses to those demands.[5]

The defendants moved to dismiss on July 15 and 22, 2024.[6] The Bryants responded and attached, as an exhibit, Governor Bryant's response to a motion to compel him to comply with a state court subpoena ("Response").[7] The defendants replied.[8] The district court subsequently ordered the parties to address the

---

[1] <u>ROA.6-30</u>.

[2] <u>ROA.31-77</u>.

[3] <u>ROA.78-281</u>.

[4] <u>ROA.282-297</u>; <u>ROA.299-306</u>.

[5] <u>ROA.298</u>; <u>ROA.307</u>.

[6] <u>ROA.311-346</u>; <u>ROA.365-375</u>.

[7] <u>ROA.378-885</u>.

[8] <u>ROA.889-915</u>.

applicable of *Favre v. Sharpe*, <u>117 F.4th 342</u> (5th Cir. 2024).[9] The parties complied.[10]

On March 25, 2025, the district court granted the motions, denied leave to amend, and entered its final judgment.[11] The panel issued a *per curiam* opinion affirming the district court on March 4, 2026.

**FACTS**

**I. Article**

The Article's first theme is that Bryant, Mississippi Department of Human Services ("MDHS") Executive Director John Davis, Mississippi Community Education Center ("MCEC") Director Nancy New, and Brett Favre conspired[12] to use $4 million of welfare funds to pay for the construction of a volleyball facility at the University of Southern Mississippi ("USM");[13] that Bryant assured Favre that he would direct additional welfare dollars to the project;[14] and that Bryant used texts with a staff attorney,[15] Favre,[16] newly-appointed MDHS Executive Director Chris

---

[9] <u>ROA.928</u>.

[10] <u>ROA.929-948</u>.

[11] <u>ROA.949-971</u>.

[12] <u>ROA.32</u>; <u>ROA.53</u>; <u>ROA.55</u>; <u>ROA.65</u>.

[13] <u>ROA.40</u>; <u>ROA.53-54</u>.

[14] <u>ROA.61-62</u>.

[15] <u>ROA.57</u>; <u>ROA.64-65</u>.

[16] <u>ROA.57-59</u>; <u>ROA.64</u>.

2

Freeze,[17] and USM President Rodney Bennett[18] to conceal his involvement from future investigators.[19] Its second theme is that Bryant directed welfare funds to Prevacus, a pharmaceutical company promoted by Favre;[20] that Bryant agreed to accept Prevacus stock two days after leaving office;[21] and that these events were part of an illegal[22] arrangement.[23]

The Article cites several sources that it does not use to support its claims about Bryant, including texts,[24] interviews,[25] public filings and records,[26] statutes,[27] contracts,[28] a *Mississippi Today* article,[29] and publicly available statements[30] and

---

[17] ROA.63-64; ROA.66.

[18] ROA.69.

[19] ROA.65.

[20] ROA.33.

[21] ROA.73.

[22] ROA.34.

[23] ROA.50.

[24] ROA.35; ROA.36-38; ROA.40-41; ROA.43-45; ROA.51-53; ROA.55; ROA.75-76.

[25] ROA.32; ROA.34; ROA.37; ROA.42; ROA.45; ROA.48-49; ROA.50-51; ROA.53; ROA.60; ROA.71-72.

[26] ROA.38-40; ROA.42-44; ROA.48-50; ROA.54; ROA.60; ROA.66-67; ROA.71-74.

[27] ROA.39; ROA.41-42.

[28] ROA.50; ROA.74.

[29] ROA.74.

[30] ROA.32; ROA.39; ROA.41-42; ROA.50; ROA.52; ROA.54; ROA.70-72; ROA.74-75.

information.[31] The sources supporting the claims about Bryant are limited to texts sent or received by Bryant regarding Prevacus,[32] the volleyball facility,[33] or other matters;[34] texts between Favre and New regarding the volleyball facility;[35] a quote from Carol Burnett;[36] a quote from Davis;[37] and a calendar invite sent by Davis.[38]

## II. Complaint

The body of the complaint alleges ten facts[39] to support its actual malice allegations, including that there is no "competent evidence" proving Bryant did anything corrupt or illegal, and the defendants disregarded "objective evidence" proving that Bryant did not direct welfare funds to the volleyball facility or Prevacus.[40] Additional facts incorporated into the complaint and known to the defendants at the time of publication support these allegations.

---

[31] ROA.31; ROA.37; ROA.39; ROA.52; ROA.60; ROA.65; ROA.69; ROA.70.

[32] ROA.35; ROA.46-47; ROA.49; ROA.52; ROA.67.

[33] ROA.36-37; ROA.39; ROA.42; ROA.45-46; ROA.56-66; ROA.69-70.

[34] ROA.54; ROA.67.

[35] ROA.40-45; ROA.52-53; ROA.55; ROA.57; ROA.61-62; ROA.76.

[36] ROA.40.

[37] ROA.73.

[38] ROA.47.

[39] ROA.11 at ¶ 3.12; ROA.14 at ¶ 6.8; ROA 14-15 at ¶¶ 6.11-12; ROA.20 at ¶¶ 6.24-25.

[40] ROA.20 at ¶ 6.24.

<u>**ARGUMENT**</u>

## I. Standard of Review

This Court reviews "a district court's decision on a Rule 12(b)(6) motion *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Santander v. Salazar*, <u>133 F.4th 471, 477</u> (5th Cir. 2025) (cleaned up). "To survive a motion to dismiss, the complaint must contain 'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Iqbal*, <u>556 U.S. at 678</u>). "[I]t is not the district court's province to dismiss a plausible complaint because it is not as plausible as the defendant's theory. The test is whether the complaint is plausible, not whether it is less plausible than an alternative explanation." *Palin v. New York Times Company*, <u>940 F.3d 804, 815</u> (2nd Cir. 2019) (quoting *Iqbal*, <u>556 U.S. at 678</u> ("The plausibility standard is not akin to a probability requirement….")).

Here, the district court disregarded plausible inferences favoring an actual malice finding and credited only those that do not. In so doing, the court applied the "probability requirement" disavowed in *Iqbal*. This Court adopted the district court's reversible error in its *per curiam* affirmance.

## II. Actual Malice

Public officials cannot prove defamation without establishing actual malice, "that is, [the defendant made the statement] with knowledge that it was false or with

reckless disregard of whether it was false or not." *Rebozo*, <u>637 F.2d at 378</u>. "Although the defendant's state of mind is a subjective fact, it can be shown by indirect or circumstantial evidence." *Zerangue v. TSP Newspapers, Inc.*, <u>814 F.2d 1066, 1070</u> (5th Cir. 1987) (citing *Herbert v. Lando*, <u>441 U.S. 153, 165</u>, <u>99 S.Ct. 1635</u>, <u>60 L.Ed.2d 115</u> (1979)). Additionally, because "proof of actual malice calls a defendant's state of mind into question," this element "does not readily lend itself to summary disposition." *US Dominion v. Byrne*, <u>600 F. Supp. 3d 24, 33</u> (D. D.C. 2022) (quoting *Hutchinson v. Proxmire*, <u>443 U.S. 111, 120</u> n.9, <u>99 S.Ct. 2675</u>, <u>61 L.Ed.2d 411</u> (1979)).

### A. Volleyball Facility

### 1. Relying on speculation

The Article's ***only*** source for its claim that Bryant directed $4 million in welfare funds to the project is Carol Burnett, who lacks firsthand knowledge of the relevant events.[41] Reliance on information from someone lacking firsthand knowledge supports a plausible inference of actual malice. *Amin v. NBCUniversal Media, LLC*, No. 5:21-cv-56, <u>2024 WL 3188768</u>, at *26 (S.D. Ga. June 26, 2024).

### 2. Weaponizing obvious ambiguity

In *Rebozo*, this Court held that a reporter's resolution of "obvious ambiguity… in favor of the most potentially damaging alternative creates a jury

---

[41] <u>ROA.40</u>.

question on whether the publication was indeed made without serious doubt as to its truthfulness." 637 F.2d at 381-82; *Warford v. Lexington Herald-Leader Co.*, 789 S.W.2d 758, 773 (Ky. 1990).

The Article uses two texts to support its claim that Bryant assured Favre that he would direct additional welfare dollars to the project. In the first, the Article reports: "One day after assuring Favre the deal[42] would not be published, New texted him: 'Wow, just got off the phone with Phil Bryant! He is on board with us! We will get this done!'"[43] New likely meant that Bryant was "on board" with private fundraising, given his prior commitment to assist and her later suggestion to Favre that they hold a fundraiser at the governor's mansion.[44] Rosenberg disregarded this innocent interpretation in favor of one that harms Bryant, conflicting with *Rebozo*.

In the second, the Article reports that Bryant "was still cautious with his texts. But on the phone with Favre, Bryant was more candid – and then Favre texted New what Bryant said, inadvertently creating a record of it."[45] Favre's text reads: "He said to me just a second ago that he has seen it but hint hint that you need to reword it to get it accepted."[46] Favre did not state that they had a phone conversation, and

---

[42] New paid $1.1 million to Favre, who directed the money to construction costs. ROA.41.

[43] ROA.42.

[44] ROA.45.

[45] ROA.61.

[46] ROA.62.

contemporaneous evidence suggests he exaggerated something Bryant wrote in an earlier text. Before texting New, Favre texted Bryant: "If you are saying she needs to reword and resubmit, I'll tell her." Bryant responded: "I would do that if I were her."[47] Rosenberg ignored this exchange in favor of a strained interpretation of the word "said," conflicting with *Rebozo* and giving rise to a plausible actual malice inference.

### 3. Publishing without a source

The Article identifies ***no source*** to support its claim that Bryant's texts to his staff attorney, Favre, Freeze, and Bennett were a ruse to lead future investigators to believe he was only an "honest occasional advisor."[48] Publishing such an outrageous claim without a source supports a plausible inference of actual malice. *Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 420 (S.D. N.Y. 2022).

### 4. Disregarding contradictory evidence

Bryant filed the Response on September 23, 2022, eight months before the Article's publication.[49] The defendants reviewed it before publishing the Article.[50] The Response proves that –

---

[47] ROA.439-440.

[48] ROA.65.

[49] ROA.398.

[50] ROA.67; ROA.73.

a. Bryant agreed to help Favre with private fundraising.[51]

b. Davis and New agreed to direct $4 million to the project, subject to obtaining approval from the Institutions of Higher Learning ("IHL"). IHL approved the project and detailed its terms in board minutes. Bryant was not involved in this effort.[52]

c. Fifteen months later, Favre requested that New and Davis provide additional funds.[53] New said they were willing,[54] but Davis resigned before making payment. Favre then turned to Bryant for help.[55] Bryant asked a staff attorney to investigate[56] and told Favre that he did not "want to get anyone in trouble for improper expenditures."[57] Undeterred, Favre expanded his request to include funding for an indoor practice facility at USM.[58] Bryant refused, explaining that welfare funds are "tightly controlled."[59]

---

[51] ROA.414-415.

[52] ROA.156; ROA.416; ROA.419-20.

[53] ROA.425-426.

[54] ROA.426.

[55] ROA.428-429.

[56] ROA.430-431.

[57] ROA.432-433.

[58] ROA.434.

[59] ROA.434-435.

d. In response, New proposed using the facility to host "programs and resources"[60] that would cost $1.5 to $2 million.[61] Bryant asked if the money would be used for "bricks and mortar."[62] Relaying a message from New, Favre said no.[63]

e. Favre next asked if New should "reword and resubmit" her proposal. Bryant said it needed greater detail – "[l]ike how many times the facility will be used and how many child[ren] will be served and for what specific purpose."[64] New amended the proposal. Favre sent it to Bryant and asked if MDHS would approve it.[65] Bryant responded: "We will see soon. I would have listed the number of people proposed to be reached by the program and the number of employees necessary to achieve these goals."[66]

---

[60] ROA.436.

[61] ROA.437.

[62] ROA.438.

[63] ROA.438.

[64] ROA.440.

[65] ROA.440.

[66] ROA.440.

f. Freeze told Bryant that MDHS was "not inclined to approve" the proposal.[67] Bryant said he was "not going to interfere."[68] Favre continued to press,[69] but Bryant did not relent. He told Favre: "we have to follow the law,"[70] "[t]o override or not obey the law would be a potentially criminal offense,"[71] and "Nancy should have been more careful in giving any assurance that the project would be approved."[72]

g. Bryant's term concluded on January 14, 2020. Nearly two weeks later, he told Favre that he wanted to discuss with Bennett whether Favre should seek a legislative appropriation for the project.[73] Bennett told Bryant that he did not favor a special appropriation and said: "It's time for [Favre] to pay up – it really is just that simple."[74] Favre paid over $1.4 million in personal funds and raised additional money to cover the remaining construction costs.[75]

---

[67] ROA.440-441.

[68] ROA.441.

[69] ROA.441; ROA.444-446

[70] ROA.442.

[71] ROA.444.

[72] ROA.445.

[73] ROA.448-449.

[74] ROA.450.

[75] See the article hyperlinked on ROA.74.

The defendants knew that Bryant not only did not direct welfare funds to the project, but that he had repeatedly refused to do so. Their publication of defamatory statements that were contradicted by information known to them gives rise to a plausible inference of actual malice. *Time, Inc. v. Ragano*, 427 F.2d 219, 221 (5th Cir. 1970); *Zerangue*, 814 F.2d at 1071; *Palmtag v. Republican Party of Nebraska*, 999 N.W.2d 573, 593-95 (Neb. 2004).

### 5. Disregarding Bryant's denial

The defendants disregarded Bryant's denial that he had directed welfare funds to the project, despite knowing that there was objective evidence supporting it.[76] This act gives rise to an inference of actual malice. *Rebozo*, 637 F.2d at 377; *Tah v. Global Witness Publishing, Inc.*, 991 F.3d 231, 242 (D.C. Cir. 2021) (quoting *Lohrenz v. Donnelly*, 350 F.3d 1272, 1285 (D.C. Cir. 2003)).

### B. Prevacus

### 1. Weaponizing obvious ambiguity

The Article relies on the following to support its claim that Bryant directed welfare funds to Prevacus:

---

[76] ROA.40.

a. One of Favre's business partners referred to Bryant as part of his "team," to which Bryant replied: "We will get this done." Bryant also texted Favre about "our cause."[77]

b. Favre texted Bryant after his initial dinner meeting with Prevacus Chief Executive Officer Jake VanLandingham and others to discuss the company: "It's 3rd and long, and we need you to make it happen!!" Bryant responded: "I will open a hole."[78]

c. Davis circulated a calendar invite that said Favre and Bryant had requested a meeting to discuss Prevacus.[79] During the meeting (that Bryant did not attend or know was occurring),[80] New agreed to send $1.7 million in welfare funds to Prevacus.[81]

d. VanLandingham informed Bryant that he was "working with" New on "Phase 1A funding." Bryant responded: "We will get this done."[82]

---

[77] ROA.35; ROA.49.

[78] ROA.46-47.

[79] ROA.47.

[80] ROA.133-34.

[81] ROA.49.

[82] ROA.52.

e.  Davis told Rosenberg: "I'm embarrassed I succumbed to the powers above me and which had been in place years before me. That's not an excuse. I deeply regret my actions."[83]

The texts and quote are vague and ambiguous, and the calendar invite does not suggest that Bryant directed New's commitment. Nonetheless, the Article construed these sources against Bryant, giving rise to a plausible inference of actual malice. *Rebozo*, 637 F.2d at 381-82.

## 2. Intentionally misconstruing evidence

The Article reports: "Two days after Bryant became a private citizen again, …VanLandingham texted him, ***offering stock***. VanLandingham described it as a 'company package for all your help.' Bryant wrote back: 'Sounds good. Where would be the best place to meet? I am now going to get on it hard.'"[84] The Article later reports that Bryant agreed to "accept Prevacus stock" in his response.[85]

The Article does not contain the full language of VanLandingham's text. It reads: "Now that you're unemployed, ***I'd like to give you*** a company package for all your help. Let me know when you come up for air, but know we want and need you

---

[83] ROA.73.

[84] ROA.67 (emphasis added).

[85] ROA.73.

on our team!!!"[86] The omission of this language is significant for two reasons. First, VanLandingham offered nothing. He said he would "like to give" Bryant a company package and wanted Bryant to join the Prevacus "team," implying that Bryant could later reject whatever he might offer. Second, when Bryant's response is matched with VanLandingham's actual message, it is apparent that Bryant did not agree to accept stock. He said he would like to meet and used the phrase "get on it hard" to convey his excitement about the prospect of his firm potentially working with Prevacus.

The Court can reasonably conclude that the defendants knowingly or recklessly concealed the complete exchange to make it seem more convincing or condemnatory than it is, *Westmoreland v. CBS*, 596 F. Supp. 1170, 1174 (S.D. N.Y. 1984), and that they interpreted the "get on it hard" language in the most damaging way for Bryant, giving rise to a plausible inference of actual malice. *Rebozo*, 637 F.2d at 381-82.

### 3. Disregarding Bryant's denial

In an interview,[87] reporter Anna Wolfe told Bryant that it appeared he had helped Prevacus during his last year in office, and, after leaving office, had "answered affirmatively when asked about taking stock. And the fact you never did

---

[86] ROA.224 at ¶ 6.250 (emphasis added).

[87] ROA.73-74 (hyperlinking the interview).

is because those arrests were made before you were able to meet to 'seal the deal.'"

Bryant adamantly denied this accusation, responding: "No, no, no, no."[88]

The Article's dismissal of Bryant's denial gives rise to a plausible inference of actual malice because the Article's author, Michael Rosenberg, knew that Bryant's text exchange with VanLandingham did not reveal a stock offer or acceptance. *Rebozo*, 637 F.2d at 377; *Tah*, 991 F.3d at 242; *Lohrenz*, 350 F.3d at 1285.

### 4. Failing to interview a material witness

"Where investigation for a story that is not 'hot news' is grossly inadequate in the circumstances, actual malice may be inferred from the publisher's failings as an investigator." *Bartimo*, 771 F.2d at 900. This is particularly true when the story contains "obvious inaccuracies." *Zerangue*, 814 F.2d at 1071.

Bryant's text to VanLandingham does not reveal a stock agreement, but it does contain ambiguous "get on it hard" language. Rosenberg could have interviewed Poncho James, whom he knew had spoken with Bryant and VanLandingham after the text exchange about a potential stock offer.[89] The Court can plausibly infer that Rosenberg did not contact James to avoid the truth, which

---

[88] See the article cited at ROA. 131 n. 28, at 19.

[89] ROA.225.

proves actual malice. *Curtis Publishing Co. v. Butts*, <u>388 U.S. 130, 157</u>, <u>87 S.Ct. 1975</u>, <u>18 L.Ed.2d 1094</u> (1967).

### C. Common Facts

### 1. Sensationalism

The Article accuses Bryant of conspiring with an NFL Hall of Fame quarterback and admitted felons to misspend millions of welfare dollars, agreeing to accept payment for his efforts, and attempting to conceal the nature of his involvement from law enforcement. This sensationalism proves actual malice. *Blanke v. Time, Inc.*, <u>308 F. Supp. 378, 380</u> (E.D. La. 1970).

### 2. Disregarding public statements of law enforcement

In an interview,[90] State Auditor Shad White said that after a two-year investigation, he had not seen evidence of Bryant directing Davis "to make specific payments to specific programs,"[91] and "he had not seen evidence that Bryant broke any law."[92] White did not accuse Bryant of wrongdoing in the 19 months between his interview and the Article's publication, and has not since. The defendants' disregard of White's statements proves they acted with actual malice. *Batson v.*

---

[90] <u>ROA.122-126</u>.

[91] See the article cited at <u>ROA.122</u> n.23.

[92] <u>ROA.178</u>.

*Time, Inc.*, <u>298 So. 2d 100, 108</u> (La. Ct. App. 1st Cir. 1974), *cert. denied*, <u>299 So. 2d 803</u> (La. 1974).

### 3. Inherent improbability

White arrested Davis, Nancy New, Zach New, and a few others on February 4, 2020.[93] Nearly two years later, he issued written demands to recover $77 million in misspent welfare funds.[94] He did not issue a demand to Bryant despite possessing texts between Davis and Bryant,[95] as well as between Bryant, Favre, and VanLandingham.[96]

The News pleaded guilty to state and federal felonies on April 20 and 22, 2022.[97] Davis pleaded guilty to state and federal felonies on September 22, 2022.[98] The News and Davis were required to report information about Bryant to prosecutors as a condition of their pleas. Federal and state investigators did not question Bryant before the Article's publication, much less accuse him of a crime, despite well over

---

[93] <u>ROA.85</u>.

[94] <u>ROA.86-87</u>.

[95] <u>ROA.201</u>.

[96] <u>ROA.140-141</u>; <u>ROA.167-170</u>.

[97] <u>ROA.85-86</u> nts.3, 4.

[98] <u>ROA.85</u> n.2.

three years having passed since the arrests, over a year having passed since the News pleaded guilty, and nearly eight months having passed since Davis pleaded guilty.[99]

On May 9, 2022, MDHS filed suit against 38 defendants.[100] It did not sue Bryant. Later, MDHS terminated its attorney[101] and replaced him with Jones Walker LLP. MDHS filed an amended complaint on December 13, 2022, adding claims and defendants.[102] It did not add Bryant.

The Court can reasonably infer that Bryant's involvement in a criminal conspiracy, ignored for years by the state auditor, the FBI, and state and federal prosecutors, is so inherently improbable that only a reckless person would believe it. White's interview and MDHS's decision to sue all purported co-conspirators, except for Bryant, amplify this improbability. *US Dominion v. Powell*, 554 F. Supp. 3d 42, 63-64 (D. D.C. 2021) (citing *St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)).

---

[99] ROA.233; ROA.237.

[100] ROA.179-181.

[101] ROA.183.

[102] ROA.192.

### 4. Knowing the harm to Bryant

Concurring in *Butts*, 388 U.S. at 170, Chief Justice Warren noted that "the Saturday Evening Post proceeded on its reckless course with full knowledge of the harm that would likely result from publication of the article." The defendants understood the harm they would cause Bryant, giving rise to a plausible inference of actual malice.

### 5. Refusing to retract

On April 11, 2024, Bryant demanded that the defendants retract the Article.[103] The defendants had ample time to reassess the Article's truthfulness and retract its claims, but they did not.[104] The Court can reasonably infer from their refusals that the defendants published the Article with actual malice. *Zerangue*, 814 F.2d at 1071 (citing *Golden Bear Distributing Systems*, 708 F.2d at 950).

---

[103] ROA.282-289

[104] ROA.11.

<u>CONCLUSION</u>

Proving actual malice is difficult enough, perhaps too difficult in today's media landscape.[105] The district court's disregard of plausible inferences of actual malice favoring Bryant violates binding and influential authorities, rendering the task of plausibly pleading actual malice nearly impossible. This Court should grant rehearing *en banc* and reverse the district court.

**RESPECTFULLY SUBMITTED:**

By: /s/ *William M. Quin II*

William M. Quin II (MS Bar No. 10834)
W. Thomas McCraney, III (MS Bar No. 10171)
**MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
Facsimile: (601) 510-2939
Email: wquin@mmqnlaw.com
tmccraney@mmqnlaw.com

**Attorneys of record for Plaintiffs-Appellants, former Mississippi Governor Phil Bryant and former First Lady Deborah Bryant**

---

[105] ECF Doc. #70-1 (Oldham, J., concurring).

21

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served on all registered counsel of record on this day via the Court's ECF filing system in compliance with Fed. R. App. P. 25(b) and (c), and has been transmitted to the Clerk of Court.

**SO CERTIFIED,** on this 17th day of March, 2026.

/s/ *William M. Quin II*
William M. Quin II

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.      This petition complies with the type-volume limitations of <u>Fed. R. App. P. 40(d)(3)(A)</u> and <u>5th Cir. R. 40.2.5</u>. It contains 3,889 words, including the statement required by <u>Fed. R. App. P. 40(b)(2)</u> and footnotes, but excluding the sections exempted by <u>Fed. R. App. P. 32(f)</u> and <u>5th Cir. R. 32.1</u>.

2.      This petition meets the typeface requirement of <u>Fed. R. App. P. 32(a)(5)</u>. It uses a proportionally spaced serif typeface in 14-point font.

3.      The footnotes in this petition satisfy the typeface requirement of <u>5th Cir. R. 32.1</u>. They employ a proportionally spaced typeface in a 12-point font.

4.      This petition meets the typestyle requirement of <u>Fed. R. App. P. 32(a)(6)</u>. It uses a plain, roman style called Times New Roman.

**RESPECTFULLY SUBMITTED,** on this 17th of March, 2026.

/s/ *William M. Quin II*

William M. Quin II (MS Bar No. 10834)
W. Thomas McCraney, III (MS Bar No. 10171)
**MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone:  (601) 707-5725
Facsimile:  (601) 510-2939
Email:        wquin@mmqnlaw.com
                  tmccraney@mmqnlaw.com

**Attorneys of record for Plaintiffs-Appellants, former Mississippi Governor Phil Bryant and former First Lady Deborah Bryant**

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 4, 2026

Lyle W. Cayce
Clerk

————————

No. 25-60196

————————

Phil Bryant; Deborah Bryant,

*Plaintiffs—Appellants*,

*versus*

Michael Rosenberg; Arena Group Holdings, Incorporated, "Arena", *formerly known as* TheMaven, Incorporated,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:24-CV-260

———————————————————————

Before Richman, Higginson, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Plaintiffs Phil and Deborah Bryant brought a defamation suit against author Michael Rosenberg and publisher Arena Group Holdings. The district court dismissed the Bryants' claims. This court has reviewed the parties'

———————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-60196

briefs, the record, the district court's opinion, and the applicable law. We find no reversible error.

AFFIRMED.

No. 25-60196

Andrew S. Oldham, *Circuit Judge*, concurring:

As many jurists have explained, the actual-malice standard has "*no relation* to the text, history, or structure of the Constitution." *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 251 (D.C. Cir. 2021) (Silberman, J., dissenting in part).[1] For most of our Nation's history, libel laws were alive and well in state legislatures and courts. *Dershowitz v. Cable News Network, Inc.*, 153 F.4th 1189, 1198 (11th Cir. 2025) (Lagoa, J., concurring). But in 1964, the Supreme Court "overturn[ed] 200 years of libel law," constitutionalized an actual-malice standard, and recognized that lies can be constitutionally protected. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 766 (1985) (White, J., concurring in the judgment); *see N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964).

*Sullivan* created bad consequences. As then-Professor Kagan put it, *Sullivan* has an "obvious dark side": It "allow[s] grievous reputational injury to occur without monetary compensation or any other effective remedy." Elena Kagan, *A Libel Story:* Sullivan *Then and Now*, 18 L. & Soc. Inquiry 197, 205 (1993) (reviewing Anthony Lewis, Make No Law: The *Sullivan* Case and the First Amendment (1991)). Or, as Judge Silberman described, *Sullivan* gives the press freedom to "cast false aspersions on public figures with near impunity." *Tah*, 991 F.3d at 254 (Silberman, J., dissenting).

─────────────────────

[1] *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 380 (1974) (White, J., dissenting); *McKee v. Cosby*, 586 U.S. 1172, 1173 (2019) (Thomas, J., concurring in the denial of certiorari); *Berisha v. Lawson*, 141 S. Ct. 2424, 2425 (2021) (Thomas, J., dissenting from the denial of certiorari); *id.* at 2425–26 (Gorsuch, J., dissenting from the denial of certiorari); *Dershowitz v. Cable News Network, Inc.*, 153 F.4th 1189, 1197 (11th Cir. 2025) (Lagoa, J., concurring).

3

No. 25-60196

And in the years since *Sullivan*, the constitutional right to lie has expanded. It now includes the right to print and shout outrageous lies at a Marine's funeral. *See Snyder v. Phelps*, 562 U.S. 443 (2011). And it empowers two-bit charlatans to claim our Nation's highest military honor. *See United States v. Alvarez*, 567 U.S. 709 (2012).

And even if the First Amendment did immunize atrocious falsehoods, *Sullivan*'s heightened standard for libeling public figures is particularly difficult to understand. Before *Sullivan*, the common law considered "libels against public figures to be, if anything, *more* serious and injurious than ordinary libels." *McKee v. Cosby*, 586 U.S. 1172, 1177 (2019) (Thomas, J., concurring in the denial of certiorari); *see also Dershowitz*, 153 F.4th at 1198 (Lagoa, J., concurring) (making a similar point). Why should public figures—the very people most prone to attract libels—be uniquely disabled to combat them? And in the social media age, when almost anyone can become a public figure almost instantly, why should the First Amendment protect some Americans less than it protects others?

At the end of the day, though, our inferior court is bound by *Sullivan*. So I concur.